[No. 38802.    Department One.    February 2, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. ANNA LEE
BARNETT, *Appellant*.*

*Hohlbein, Church, McGuire & VanDerhoef*, by *Kenneth
D. VanDerhoef*, for appellant.

*Charles O. Carroll* and *David W. Soukup*, for respondent.

HALE, J.—Defendant, using the name Lee Thompson,
worked as a bookkeeper for Smith-Florence, Inc., maintain-

*Reported in 423 P.2d 527.

ing the payroll and a record of accounts payable. Frequently she prepared checks on her typewriter for the signature of Thomas Fenner, the company's production manager. On some occasions before Mr. Fenner signed a check, she would imprint the face amount on it with the company's locked-type check protector to which she had a key. On other occasions, however, she used the check protector after Mr. Fenner had signed the check. She now appeals from a conviction of forgery for raising a check from $107.89 to $12,107.89.

During the summer of 1961, defendant, with $107.89 of her own money, bought an air conditioner for office use. She asked Mr. Fenner for reimbursement, presenting to him a company check in that amount for his signature. Mr. Fenner testified explicitly that the check proffered him by defendant had been made out at the time he signed it for the $107.89 requested, and that he had never signed a check where the amount stamped by a check protector reached $12,000. He said that he had often signed typewritten checks prepared by defendant prior to her stamping the face amount on them with the company check protector.

He identified the check in issue (No. 2588) as one of those prepared by defendant on a regularly printed blank check of Smith-Florence, Inc., dated August 10, with the amount $12,107.89 typed on the right, and "The Sum 12 107 Dols 89 cts" printed in check protector printing across the center face, payable to the order of Lee Thompson Enterprises. This check, he said, had been submitted by defendant and signed by him before the number "12" had been inserted ahead of the 107.89, and the word "Enterprises" had been added to the name of the payee.

Mr. Fenner also testified that, to the best of his recollection, the payee's name on the check when defendant brought it to him was Lee Thompson; he had no recollection whatever of signing any check payable to Lee Thompson *Enterprises*, for his company had never had any accounts or transactions with a firm by that name. There is no dispute that defendant endorsed the $12,107.89 check

and deposited it in an account which she had opened under the name of Lee Thompson Enterprises in a different bank than the one it was drawn upon.

Defendant's first point on appeal is that the state did not prove the check to have been raised or altered *after* the signature of Thomas Fenner had been placed on it. Thus, she contends, if the check had not been increased after signature, it was not a forged instrument, and the state, if it proved any crime, established a larceny and not a forgery.

■ We find little evidence to support defendant's position on this point, for the testimony of experts showed a very skillful job of raising both the typewritten amount of the check by typing the number "12" before the number "107.89," and inserting the typewritten word "Enterprises" right after the words "Lee Thompson." This evidence combined with the testimony of Thomas Fenner that, when defendant brought the check to him, it was payable to Lee Thompson and not Lee Thompson Enterprises, in the amount of $107.89, and not $12,107.89, made out a case from which the jury well could find that defendant had forged the check by raising the amount thereof with typewriter and check protector after the maker had signed it. Proof that defendant then uttered the raised check by depositing it to her private account in the name of Lee Thompson Enterprises made the case against her even stronger.

Forgery may consist, *inter alia,* of "false making, 'counterfeiting' and the *alteration,* erasure or obliteration of a genuine instrument in whole or in part." RCW 9.44.010. (Italics ours.) From all the evidence, the jury had ample evidence upon which to find the defendant guilty of forgery as charged.

The other assignment of error concerns admission in evidence of two letters written by defendant, signed by her as Anna Lee Barnett 4781, under which signatures defendant had typed the address "Harrison 'B' Frontera, California 91720." One letter, addressed to the prosecuting attorney of King County, contained the copy of the other letter to United Control Corporation, the successor to Smith-

Florence, Inc. The trial court admitted in evidence the entire letter of transmittal addressed to the prosecuting attorney, but blocked from jury examination all of the copy letter to United Control Corporation, except the address, the date (April 22, 1964), the typed signature, and the following message:

There is no doubt as to my guilt, and it is not my intention to plead "not guilty." From the day of my arrest, until this date, I have said I was guilty and shall continue to do so. Therefore my case there would be only a formality.

At the time defendant sent the two letters to the prosecuting attorney in April of 1964, she was serving time in a California penal institution, and the instant forgery charge had been pending against her in a justice court complaint since September 14, 1961. Meanwhile, she left this state and Washington authorities had been unable to find her until they learned of her arrest in 1963 for grand theft in California. Her purpose, obviously, in writing the letters was to have the pending charge in Washington disposed of in some way favorable to her so that the California penal system would not be required to take cognizance of the charge pending here when fixing her minimum sentence there.

Defendant urges error in admitting either letter in evidence, (1) because the signature, her address, and the contents indicated that she had written them from a penal institution, thus prejudicing her by showing a prior conviction, and (2) because the prosecuting attorney treated the body of the letter to United Control Corporation as an admission of forgery; whereas, she argues, the letter was intended by her to acknowledge grand larceny only. She says that admitting these letters in evidence might compel her to take the witness stand in explanation thereof.

At a pretrial hearing on admissibility of the letters pursuant to Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0, as we have said, the court ordered numerous incriminating statements in the letter to United Control expunged from jury view, leaving for examination only the portion set forth above. We need not decide if the admitted

segment constituted a confession or an admission against interest, for the trial judge gave the letters the same treatment and consideration as if they constituted a confession under RPPP 101.20W, RCW vol. 0.

We see no valid reason, whether confession or admissions against interest, to exclude the letters from evidence. Written as they were from another state at the defendant's instance, on her own volition in her behalf and for her benefit, there can be no denying their voluntary character. Nothing in the record suggests that either letter was involuntary or coerced. That the letters might lead some jurors from the return address, signature and contents to suspect the truth, *i.e.*, that defendant wrote the letters while serving time in a California penal institution, or enable the jurors to see in the language an admission of forgery instead of larceny, does not affect their admissibility.

Any voluntary statements by one suspected or accused of crime relating to facts or circumstances which indicate either a consciousness of guilt or which tend to show a connection with conditions or events tending to connect the accused with the crime charged are receivable in evidence as admissions against interest. *State v. Dooley*, 133 Wash. 392, 233 Pac. 646 (1925); *State v. Godwin*, 143 Wash. 93, 254 Pac. 838 (1927). And this is the rule even though explanations from the persons making the statements might well render them less damaging or even innocuous. The true test of admissibility is whether the evidence is competent, relevant and material to any issue before the jury. *State v. Morris*, 70 W.D.2d 26, 422 P.2d 27 (1966).

That damaging evidence might induce one on trial for a crime to take the witness stand in explanation of it gives no ground for excluding such evidence, for this objection could be made against nearly all competent and material evidence tending to establish guilt or tending to connect the defendant with conditions, events and circumstances from which guilt may reasonably be inferred.

The other claims of error urged are without merit and the judgment is, accordingly, affirmed.

ROSELLINI, OTT, and HUNTER, JJ., and LANGENBACH, J. Pro Tem., concur.