[No. 93-40914-2.   Division Two.   April 21, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. MANCIL PETER-SON, *Appellant*.

*Wayne Roethler* and *George E. Twining*, for appellant.

*Henry R. Dunn, Prosecuting Attorney*, for respondent.

PETRIE, J.—Defendant, Mancil Peterson, was convicted by a jury of taking indecent liberties with a female child under the age of 15. His appeal advances two specific assignments of error.

Defendant contends, initially, that the trial court unduly limited the scope of his cross-examination of the complaining witness' mother—to the extent that he was not permitted to fully test the credibility of the mother and daughter.

The all-important issue before the jury was: Did defendant take indecent liberties with the complaining witness? The jury had to rely chiefly upon the story related by the complaining witness. She testified that the defendant had

taken indecent liberties with her upon several occasions, extending over an interval of 4 or 5 months, the last of which occurred on or about November 2, 1968. Defendant denied the charge. The mother of the complaining witness testified that her daughter complained of Mr. Peterson on November 5, 1968; that she received a telephone call "about a week or two after this happened" from someone who sounded like the defendant; and that the person at the other end of the 'phone declared: "Ann, if you give me a break, I will go to the doctor." Defendant denied commission of the crime and also that he ever made such a telephone call.

This, then, was the extent of the state's case: The complaining witness testified that defendant had committed the crime and her mother related receipt of a complaint from the daughter 3 days after the event, and further related the contents of a telephone conversation she purportedly had with the defendant. To further set the scene, it is uncontroverted that for over a year the defendant lived in the same home as the mother and daughter and that the mother and defendant had agreed upon procedures to punish the child when the occasion called for punishment. The mother testified that she still loved the defendant.

Defendant sought to support his denial of commission of the crime by advancing the theory that the charges brought were a fabrication initiated by an older sister of the complaining witness, who had returned to the home shortly before November, 1968. Defendant tried to establish this theory upon cross-examination of the girls' mother. Since the questions put to this witness and the corresponding objections and rulings of the trial court are important in understanding and evaluating defendant's assignment of error, they are reproduced in toto:

Q Is there anyone else in the home except you and Debbie?
A My oldest daughter is there now.
Q How old is she?
A She will be nineteen in April. She is eighteen now.
Q When did she come around the home?

A  If I can remember right, I think it was in November sometime or the latter part of October.

Q  Did she have any effect upon you bringing this case?

A  Well, she didn't tell me what to do, no.

Q  Did she talk to you about it?

A  Yes, she has.

Q  What did she tell you?

> MR. HUSSEMAN: Objection, Your Honor. It is hearsay.
>
> THE COURT: Sustained.

Q  Does your eldest daughter kind of dominate you?

A  She tries to.

Q  She tries to, is that your answer?

A  Yes.

Q  It was at her instance you brought the charges; is that correct?

> MR. HUSSEMAN: Objection, if the Court please. She didn't have anything to do with the charges.
>
> THE COURT: Sustained.

Q  Had your eldest daughter—where did she come from, California, did you say?

A  Yes she was in California for awhile.

Q  Had she remained in California, would you have brought these charges?

> MR. HUSSEMAN: Objection.
>
> THE COURT: Sustained.

Q  Did your oldest daughter come on the scene about the time Mancil moved out?

A  Did she what?

Q  Come on the scene to live with you about the time Mancil moved out?

A  She come before.

Q  Her and Mancil couldn't get along; is that correct?

A  No, sir, they didn't.

Q  Mancil moved out; is that correct?

A  Not when she come back. He was still there.

Q  And then charges were brought; is that correct? Is that correct?

A  Yes, that's right.

■ It is fundamental that a defendant charged with commission of a crime should be given great latitude in the cross-examination of prosecution witnesses to show motive or credibility. *State v. Tate,* 2 Wn. App. 241, 469 P.2d 999 (1970). This is especially so in the prosecutions of

sex crimes where, owing to natural instincts and laudable sentiments on the part of the jury, the usual circumstances of isolation of the parties involved at the commission of the offense and the understandable lack of objective corroborative evidence, the defendant is often disproportionately at the mercy of the complaining witness' testimony. *State v. Moneymaker,* 100 Wash. 463, 171 P. 253 (1918); *People v. Baldwin,* 117 Cal. 244, 49 P. 186 (1897).

In the instant case, the questions put to the mother upon cross-examination attempted to elicit testimony to establish an inference that the prosecution was initiated by the complaining witness for reasons which would tend to establish his innocence. Failure to permit the defendant reasonably to pursue a valid theory constituted error which seriously jeopardized his defense to a heinous crime. The defendant should be granted an opportunity to pursue this defense on retrial of this matter.

■ Defendant also challenges the admission of telephone conversation as related by the complaining witness' mother. Defendant's argument is 2-pronged. He contends (1) that the identity of the caller was never sufficiently authenticated and (2) in any event, the bare statement "If you give me a break, I will go to the doctor", cannot constitute an admission against interest. We find no merit in either contention. The identification of the voice at the other end of a telephone conversation need not be unimpeachably declared. It is sufficient that the witness provide a reasonable basis for such identification. The evidence indicates the witness was sufficiently familiar with the defendant's voice to have made a reasonable identification.

■ Defendant's second argument equally lacks merit. In *State v. Barnett,* 70 Wn.2d 420, 424, 423 P.2d 527 (1967) the court stated that:

Any voluntary statements by one suspected or accused of crime relating to facts or circumstances which indicate either a consciousness of guilt or which *tend* to show a connection with conditions or events *tending* to connect

the accused with the crime charged are receivable in evidence as admissions against interest.

(Italics ours.)

The true test of its admissibility is whether the evidence is competent, relevant and material to any issue before the jury. *State v. Barnett, supra.*

Defendant allegedly made the telephone call shortly after the complaint was filed. It is not unreasonable to infer that the caller was referring to a dismissal of the complaint when he asked for a "break." Furthermore, it is not so unreasonable to infer that a person who has committed an abnormal sexual act is sick and might want to see a physician. The evidence was relevant and material and properly admitted into evidence.

The judgment is reversed and a new trial awarded.

ARMSTRONG, C. J., and PEARSON, J., concur.