UNITED STATES of America, Appellee,

v.

Rufo GONZALEZ, Defendant-Appellant.

No. 140, Docket 84–1153.

United States Court of Appeals,
Second Circuit.

Argued Sept. 11, 1984.

Decided Nov. 1, 1984.

Dominic F. Amorosa, New York City, (Cheryl L. Baratta, New York City of counsel), for defendant-appellant.

Michael S. Feldberg, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for the Southern Dist. of New York, Marc J. Gottridge, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before LUMBARD, MANSFIELD, and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

Rufo Gonzalez appeals from an April 24, 1984 judgment of the District Court for the Southern District, Charles S. Haight, Jr., *Judge,* convicting him, following a February 15, 1984 jury verdict, of thirteen counts of wire fraud in violation of 18 U.S.C. § 1343 (1982) and one count of mail fraud in violation of 18 U.S.C. § 1341 (1982). Gonzalez also appeals from Judge Haight's April 11, 1984 order denying his motion for a new trial pursuant to Fed.R.Crim.P. 33 because of newly discovered evidence. Judge Haight sentenced Gonzalez on April 24, 1984 to prison terms of three years on each of fourteen counts, the sentences to run concurrently. Gonzalez alleges: 1) that he should be granted a new trial because of newly discovered evidence; 2) that his convictions should be reversed because the trial court, in violation of Fed.R.Evid. 408, admitted statements Gonzalez made during negotiations to settle a potential civil claim and because the court erroneously admitted other evidence obtained in violation of French law; 3) that his conviction on Count Fourteen for mail fraud should be reversed because insufficient evidence supports it; and 4) that his conviction on Count One for wire fraud against Banco Hispano should be reversed because of a violation of the Speedy Trial Act, 18 U.S.C. § 3161(b) (1982). Finding no merit in Gonzalez's first three claims, we affirm his convictions on Counts Two through Fourteen. Because his trial on Count One for wire fraud against Banco Hispano violated the Speedy Trial Act, we reverse that conviction.

Gonzalez was arrested June 17, 1983 on a complaint charging him with wire fraud in connection with his solicitation of a loan from the Madrid office of Banco Hispano Americano (Banco Hispano), a Spanish bank. On June 30 the government filed an indictment charging Gonzalez with two counts of wire fraud based on his solicita-

tion of a $5 million loan from the Paris office of Banco Pinto & Sotto Mayor (Banco Pinto), a Portuguese bank. The indictment alleged that Gonzalez had devised "a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses," but it did not mention Gonzalez's actions in allegedly defrauding Banco Hispano. On January 10, 1984, the government filed a superseding indictment charging Gonzalez with thirteen counts of wire fraud and one count of mail fraud in connection with Gonzalez's solicitation of loans from both Banco Hispano and Banco Pinto.

At trial, Angel Paez, former President of Corporacion Para el Desarrollo de la Pequena y Mediana Industria[1] (Corpoindustria), testified that in 1980 Corpoindustria hired Rufo Gonzalez and his companies, Venezuelan-American Company, Limited and its United States representative, Venamco Management Corp., to act as an international broker arranging, for Corpoindustria, $46.5 million in loans from eight banks. According to Paez, Gonzalez arranged these loans, and Corpoindustria, an entity owned by the Venezuelan government, repaid the borrowed funds at maturity in early 1981. According to other testimony, both Banco Pinto and Banco Hispano were asked to participate in that loan package.

Paez also testified that Corpoindustria did not renew its loan program in 1981 and did not reemploy Gonzalez. However, according to telexes introduced at trial, Gonzalez contacted Banco Pinto and Banco Hispano in March and April 1981 claiming that he was acting on behalf of Corpoindustria and seeking the banks' participation in another loan package. Both banks agreed to extend credit. In late March 1981, Banco Pinto transferred $4,288,863.50 into a bank account designated by Gonzalez and on November 23, 1981, Banco Hispano transferred $4,384,150.13 to a similar bank account. Both banks had made $5 million loans, but

they deducted their interest charges from the amount advanced.

The government also produced at trial the promissory notes purporting to evidence Corpoindustria's obligation to repay the banks. The Banco Pinto note bore the purported signatures of the then president of Corpoindustria, Angel Paez, and another Corpoindustria official, Ricardo Bolivar. It also bore the stamp of Bank of America, New York, purportedly signed by the company's representative Felix Figueroa, verifying the Corpoindustria signatures. At trial, Paez and Bolivar denied that the signatures on the note were theirs. Figueroa testified that the stamp on the note differed from that used by Bank of America in 1981 and that he had not signed the note. The government presented samples of Figueroa's signature and the stamp actually used by Bank of America in 1981 for comparison with the signature and stamp that appeared on the note.

The Banco Hispano note bore the purported signatures of Paez, and Corpoindustria's Treasurer, Mery A. Lugo Pena, and also bore what appeared to be the company's stamp. The note also bore the stamp of Banco Industrial de Venezuela, New York Agency, purportedly signed by Jorge De La Campa, verifying the signature of an official of the Maracay Agency of Banco Industrial de Venezuela, who in turn verified the signatures of the Corpoindustria officials. Finally, it bore the stamp of BankAmerica International, signed by that company's representative, Josefina Arrazola, verifying the signatures of officials of Banco Industrial de Venezuela. At trial, however, Paez testified that the note was not valid, that he did not sign the note, that his name was misspelled on the note and that the Corpoindustria stamp on the note was not the stamp the company used in 1981. Lugo Pena also testified that she had not signed the note. De La Campa testified at trial that he did not believe that the signature which purported to be his

---

**1.** Corpoindustria is sometimes referred to in the record as Banco Industrial de Venezuela Agen-     cia Maracay Corpoindustria.

was in fact his. The government also offered as evidence the stamp actually used by Corpoindustria in 1981 for comparison with the stamp on the note.

Officers of Corpoindustria, at trial, further claimed that they had no knowledge of the loans that Gonzalez allegedly arranged for the company, and Gonzalez conceded that Corpoindustria never received the proceeds of the loans. The Banco Hispano note has not been repaid. Gonzalez has repaid over $200,000 of the Banco Pinto note pursuant to an agreement between him and the bank.

In addition, David Frauman, a Banco Pinto attorney, testified that at a May 27, 1982 meeting involving Banco Pinto's claims against Gonzalez arising out of this transaction, Gonzalez admitted that the Banco Pinto note was a forgery, that he or someone in his control executed it, and that he placed the proceeds from the Banco Pinto loan in commodity accounts under his control. The government also offered a Confession of Judgment executed on June 16, 1982 by Gonzalez in favor of Banco Pinto in which Gonzalez made the following statement: "Due to certain irregularities in connection with the Note, Corpoindustria is not liable thereon. I am personally liable for the full amount of the debt owing to Banco Pinto evidenced by the Note."

In his defense, Gonzalez testified that Paez had orally authorized him in 1981 to seek loans and to invest the money. Gonzalez claimed that he did not know the promissory notes were forged and that he lost the money through commodity trading setbacks. Gonzalez also asserted that Corpoindustria officials, as well as De La Campa and Figueroa, had testified falsely. Gonzalez's former attorney, Leonard Isaacson, testified that he did not remember Gonzalez admitting to Banco Pinto lawyers that the Banco Pinto note was forged.

### A. *New Trial.*

Gonzalez asks for a new trial under Fed. R.Crim.P. 33 because of newly discovered evidence that Jorge De La Campa once said, contrary to his testimony, that he thought his signature on the Banco Hispano note was genuine and that Josefina Arrazola, whom neither side called as a witness, once said that her signature on that note, verifying De La Campa's signature, was genuine. The government concedes that De La Campa and Arrazola once said their signatures appeared genuine, but claims that it was not aware of that fact until after trial. Judge Haight denied Gonzalez's motion for a new trial because he found it "most unlikely" that the new evidence would change the outcome of the trial. We agree.

Gonzalez is only entitled to a new trial if the newly discovered evidence is "such that it would probably lead to an acquittal." *United States v. Gilbert,* 668 F.2d 94, 96 (2d Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982). That is not the case here. The critical evidence supporting his convictions was the testimony of the Corpoindustria officials who purportedly executed the promissory notes that neither the notes nor their signatures were genuine. The newly discovered evidence does not raise doubts as to the truth of that testimony. Even if the jury were to believe that the signatures of De La Campa and Arrazola, which served only to verify the signatures of others, are genuine, the evidence that the notes were forged and the evidence of Gonzalez's guilt remains overwhelming.

### B. *Improperly Admitted Evidence.*

In addition, Gonzalez claims that improperly admitted evidence requires a reversal of his convictions. His theory is based on two arguments: 1) that Fed.R.Evid. 408 requires the exclusion of his admissions, made while negotiating a settlement to a potential civil claim, that the Banco Pinto note was a forgery and that he was liable on it; and 2) that a French statute forbidding persons to seek or transmit documents for use in foreign legal proceedings prohibits the admission of telexes provided by the Paris branch of Banco Pinto reflecting Gonzalez's dealings with the bank in 1981.

■ As Judge Haight found, Gonzalez's claim based on the French blocking statute is without merit. The French statute, French Law No. 80–538, is apparently intended to protect French businesses from excessive discovery in hostile foreign litigation. *FTC v. Compagnie De Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1325–26 (D.C.Cir.1980). However, neither the French government nor the Paris office of Banco Pinto, which voluntarily provided the telexes, has invoked the French statute. Gonzalez, a Filipino citizen charged in the United States with defrauding the French branch of a Portuguese bank, cannot invoke a French statute, designed to protect French privacy interests, in order to exclude documents that the French bank volunteered. Nor does comity require an American court to exclude telexes which were sent from the United States to France and which were not subpoenaed, but which the French branch of Banco Pinto provided voluntarily. *See United States v. Frank*, 494 F.2d 145, 156–57 (2d Cir.), *cert. denied*, 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974).

Judge Haight also properly refused to exclude Gonzalez's admissions under Fed. R.Evid. 408. Rule 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.... This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

■ According to its terms, Rule 408 does not exclude evidence of statements made in the course of settlement negotiations when that evidence is offered for a purpose other than proving the validity, invalidity or amount of the claim that gave rise to the settlement negotiations and, thus, the statements. In this criminal prosecution, Gonzalez's statements were admitted to establish that Gonzalez committed a crime, and their relevance to that issue does not depend on an inference that Banco Pinto had a valid civil claim against Gonzalez. The evidence was offered for a purpose other than one for which Rule 408 requires exclusion, and although that purpose is not one of the other purposes specifically named in Rule 408, the admission of the evidence is not barred by the Rule. *See United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982).

■ In addition, the primary policy justification for Rule 408's exclusion in the civil context does not apply to criminal prosecutions. Rule 408 is premised on the idea that encouraging settlement of civil claims justifies excluding otherwise probative evidence from civil lawsuits. Fed.R.Evid. 408 advisory committee note. However, encouraging settlement does not justify excluding probative and otherwise admissible evidence in criminal prosecutions. The public interest in the disclosure and prosecution of crime is surely greater than the public interest in the settlement of civil disputes. It follows that since nothing in the Rule specifically prohibits receiving in evidence the admissions and statements made at a conference to settle claims of private parties, they are admissible in any criminal proceeding.

## C. *Insufficient Evidence.*

Gonzalez also asserts that there was insufficient proof of a mailing in furtherance of fraud to submit Count Fourteen, charging Gonzalez with mail fraud against Banco Pinto, to the jury and insufficient evidence that such a mailing, if it took place, was from New York to justify venue in the Southern District of New York. We agree with Judge Haight that there is no merit in these arguments.

The government put in evidence a telex sent March 27, 1981 from Gonzalez to Banco Pinto in Paris which stated: "We air mailed to you today necessary papers re Corpoindustria." The telex was sent from a machine leased to Venamco Management Corp. located at 9 West 57th Street, New York, New York. In light of this evidence, Gonzalez cannot meet his heavy burden of establishing that insufficient evidence of a mailing exists. *See United States v. Soto,* 716 F.2d 989, 991 (2d Cir.1983).

D. *Speedy Trial Act.*

Finally, Gonzalez claims that we must reverse his conviction on Count One for defrauding Banco Hispano by wire because it violates the Speedy Trial Act, 18 U.S.C. § 3161(b) (1982). We agree.

The Speedy Trial Act requires that an "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (1982). The Act further provides that if no indictment is filed within the statutory time limit, the charge shall be dismissed. 18 U.S.C. § 3162(a)(1) (1982).

Because the government did not indict Gonzalez for defrauding Banco Hispano until more than six months after it arrested him for such conduct, we reverse Gonzalez's conviction on that charge. Gonzalez was arrested June 17, 1983 on a complaint charging him with wire fraud in connection with a scheme to defraud Banco Hispano by falsely representing himself to be acting on behalf of Corpoindustria. The government did not indict Gonzalez on that charge until January 10, 1984. Although the June 30, 1983 indictment, charging Gonzalez with wire fraud in connection with Banco Pinto, was filed within thirty days of Gonzalez's arrest, it did not charge Gonzalez with wire fraud in connection with Banco Hispano nor can it be construed to do so. The two charges, of course, are related and grow out of the same fraudulent scheme, but they are not based on the same conduct or the sending of the same wires. Thus, Count One of the superseding indictment, rather than being an unchanged restatement of part of the original indictment, was a first indictment on a new charge—wire fraud against Banco Hispano. As such, we dismiss that count and reverse the conviction based on it because the indictment was filed more than thirty days after Gonzalez's arrest on that charge. *See United States v. Mitchell,* 723 F.2d 1040, 1044-45 (1st Cir.1983).

Convictions on Counts Two through Fourteen affirmed; conviction on Count One reversed.