81 P.3d 161 (2003)
119 Wash.App. 530
STATE of Washington, Respondent,
v.
Courtney James O'CONNOR, Appellant.
No. 50773-7-I.
Court of Appeals of Washington, Division 1.
December 22, 2003.
Christopher Gibson, Nielsen, Broman & Koch, PLLC, and Kitteridge Oldham, Seattle, WA, for appellant.
Julie D. Cook and Carla B. Carlstrom, Deputy Prosecuting Attorneys, for respondent.

OPINION PUBLISHED IN PART
KENNEDY, J.
Courtney O'Connor appeals his conviction for a Class C felony, domestic violence malicious mischief in the second degree, arising from a tire-slashing incident.[1] He contends that the trial court erred by denying a defense motion to exclude compromise evidence under ER 408, thereby permitting the State to present evidence that O'Connor paid the victim $800 to assist her in replacing her tires, and to argue to the jury that this payment proved that it was O'Connor who slashed the tires. Whether ER 408's prohibition against admitting evidence of compromise of civil claims applies at criminal trials based on the same conduct is an issue of considerable debate around the country, and one that has not heretofore been addressed by Washington appellate courts. Based on the same grounds of public policy favoring the compromise of civil claims that underlie ER 408, i.e., encouraging non-litigious settlement of disputes and reducing courtroom congestion, our Legislature has approved the compromise of certain misdemeanor offenses as between the offender and victim, but has expressly prohibited the compromise of felonies, and of misdemeanors that constitute domestic violence. Accordingly, the offense *162 here at issue was not subject to compromise because it was both a felony and a domestic violence offense. Comment 408 suggests that the exclusionary rules contained in Title 4 of the Rules of Evidence do not apply in the face of contrary statutory provisions. We conclude that the policies favoring settlement of civil claims that underlie ER 408 do not require exclusion of compromise evidence at trials for criminal offenses that are not themselves subject to compromise. Accordingly, we affirm the trial court's evidentiary ruling.[2]

FACTS
After Rachel Bologna and Courtney James O'Connor had been dating for a few months, Bologna told O'Connor that she could not see him for a few days because she had to study for a graduate school entry exam she planned to take on November 11, 2001. According to Bologna's subsequent testimony at trial, on November 7, 2001, O'Connor called, asking to see her. Bologna refused. Later that night, sometime between 11 p.m. and 3 a.m., O'Connor called again, insisting that she allow him to come to her house to retrieve a compass he had loaned to her. Bologna agreed to place the compass on the mailbox outside her house so that O'Connor could pick it up.
As she opened the door to put the compass on the mailbox, Bologna saw O'Connor approaching the house. She went back into the house and closed the door. Bologna saw O'Connor in her front yard and near her car, which was parked on the curb in front of the house, but she did not see him do anything suspicious. A few minutes later, O'Connor called again and said, "I just don't think it's working out between us." Bologna agreed and told him that she hoped he would not call her anymore.
On the following afternoon when she next went out of doors, Bologna found that all four tires on her car had been slashed. She called O'Connor and told him that if he did not "take care of this" she would call the police. O'Connor denied slashing the tires, told her not to call and bother him again, and said, "Go ahead and call the police." Bologna called the police, and subsequently filed an insurance claim.
About a week after the incident, O'Connor came to Bologna's house because he "had something for her." He gave her $800 and "apologized for everything" but did not admit to slashing the tires. Bologna eventually collected an additional $500 from her insurance company. Her total cost for replacing the tires, including her $200 insurance deductible and the cost of a rental car, was $1,000. She never offered to refund any money to O'Connor or her insurance carrier.
Later, when questioned by a police detective, O'Connor did not admit to slashing the tires but said that he had given Bologna $800 to replace her tires. The detective subsequently testified that O'Connor encouraged him to pursue whatever course he thought appropriate or necessary, but said that he had behaved maturely, and that he considered the matter settled. In a subsequent conversation, Bologna told the detective that she had replaced the tires with O'Connor's assistance, and that she was not interested in pursuing the matter further.
The State charged O'Connor with one count of domestic violence malicious mischief in the second degree for slashing the tires. Prior to trial, the defense moved to exclude reference to the $800 that O'Connor gave Bologna as evidence of "furnishing ... a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount," and therefore inadmissible under Rule of Evidence 408.
The trial court stated:
Well, I'm satisfied that the statement allegedly made by Mr. O'Connor to the law enforcement officer is admissible. It's admissible under evidentiary rule 410. I don't believe that evidentiary rule 408 precludes its admission, and the reason is that even if the payment of the $800 to the alleged victim would not be admissible through her, we're not talking about that. *163 We're talking about a statement made or allegedly made by Mr. O'Connor to a police officer when Mr. O'Connor knows that he is being questioned regarding a criminal event, and that seems to fit squarely within the position taken by the Court in State v. Peterson, 2 Wash.App. 464, 469 P.2d 980, citing to State v. Barnett, 70 Wash.2d 420 at 424, 423 P.2d 527, which says, any voluntary statements made by one suspected or accused of a crime relating to facts or circumstances which indicate either a consciousness of guilt or which tend to show a connection with conditions or events tending to connect the accused with the crime charged are receivable in evidence as admissions against interest.
The Court then goes on to say in Peterson, the true test of its admissibility is whether the evidence is competent, relevant and material to any issue before the jury. Again citing to State v. Barnett.

So in this case we have a situation where Mr. O'Connor is contacted by a law enforcement officer, questioned regarding the alleged criminal event, and who responds by saying, I've already taken care of that; I've settled with the victim. So even if the actual discussion between Mr. O'Connor and the victim were not admissible under 408, even if the amount of money paid or the fact that money was paid would not be admissible under 408 and 410 when it's related to the police officer by Mr. O'Connor.
Now if the victim had told the officer about it, again that might come under 408, but the information given by Mr. O'Connor to the police officer is not part of the negotiation, not part of an attempt to settle. The settlement's already taken place and now Mr. O'Connor allegedly has made a statement which is incriminatory.
Report of Proceedings (4/15/02) at 8-9.[3] The court ultimately ruled that Bologna could testify about the $800 payment as well, in order to put the police officer's testimony into context for the jury.
O'Connor presented a partial alibi defense through the testimony of his mother, who said that he had been at home from 10 p.m. on November 7 until at least 2 a.m., when she went to bed. O'Connor testified at trial that he did not slash Bologna's tires, did not recall speaking with her on November 7, did not go to her house that night to retrieve a compass or for any other reason, and that, in fact, he had never owned a compass so that he could not have loaned one to Bologna. He explained that he had given Bologna the $800 to help her in replacing her tires because he still cared for her and wanted to help her out financially, even though she was wrong when she accused him of slashing her tires.
The jury found O'Connor guilty as charged. This appeal followed.

ANALYSIS
Issue 1: Does ER 408 apply in criminal trials in Washington?
ER 408, entitled "Compromise and Offers to Compromise," provides:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable *164 consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
Since the Washington Supreme Court's adoption of the Rules of Evidence in 1979, Washington appellate courts have not been required to decide whether ER 408 applies in criminal cases. 5A TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 408.1 at 49, 52 (4th ed.1999). Tegland suggests that ER 408 would be useful in the criminal context to exclude evidence of government plea bargain offers at trial  because ER 410 generally applies only to defendants' statements during plea bargaining  and "where a single incident gives rise to both civil and criminal proceedings, Rule 408 should probably protect negotiations in the civil proceeding from disclosure in the criminal proceeding." Id. at § 408.3 at 52.
ER 408 differs from the corresponding federal rule only in style, specifically by the omission of a superfluous comma, and by the substitution of the word "negating" for the federal term "negativing" in the final sentence of the rule ("negating a contention of undue delay"). Washington courts may find persuasive federal interpretation of a substantially similar federal rule.[4]
Although Federal Rule of Evidence 1101 provides that the rules of evidence apply to all court proceedings unless otherwise stated, the federal circuit courts are in profound disagreement regarding whether ER 408 applies in criminal trials.[5] In United States v. Bailey, 327 F.3d 1131, 1143-46 (10th Cir. 2003), the court reviewed the existing federal interpretations of Federal Rule of Evidence 408, and joined the Fifth Circuit[6] in concluding that the rule applies in criminal cases.[7] In Bailey's trial for wire fraud and money laundering, the trial court allowed the Government to introduce evidence of his settlement agreement entered in a civil suit filed by a number of his investment partners and arising from the same incidents as the criminal charges. 327 F.3d at 1143. Rejecting the reasoning of the Second, Sixth, and Seventh Circuits,[8] the Tenth Circuit was persuaded that Rule 408 required exclusion of the agreement for the following reasons:
[T]he Federal Rules of Evidence apply generally to both civil and criminal proceedings; nothing in Rule 408 explicitly states that it is inapplicable to criminal proceedings; the final sentence is arguably unnecessary if the Rule does not apply to criminal proceedings at all; and the potential prejudicial effect of the admission of evidence of a settlement can be more devastating to a criminal defendant than to a civil litigant.
Id. at 1146.
Similarly, the Supreme Court of Hawaii was persuaded by federal authority holding *165 that Federal Rule of Evidence 408 generally applies in criminal proceedings, when it considered its own equivalent rule. State v. Gano, 92 Hawai'i 161, 988 P.2d 1153 (1999) involved a trial for sexual assault in the first degree. The victim filed a complaint with the police on the day after the incident. About a month later, but before the indictment came down, the defendant accompanied two family members to a meeting with the victim's parents. The two families discussed the case in the defendant's presence, using the Tagalog language, which was not the defendant's first language. According to the victim's family, members of the defendant's family asked the victim's family to drop the case, or to drop the charges, and offered them money to do so. According to the defendant's family, no money was ever offered, and the victim was never asked to drop the charges. During the meeting, the defendant remained silent, but according to the victim's father, either nodded or shook his head  the evidence was unclear regarding whether he nodded his head in the affirmative or shook his head in the negative  during the entire session while the father was present. 988 P.2d at 1155-57.
Although the Hawaii Supreme Court held that "evidence of compromise of civil liability should be excluded in related criminal prosecutions to avoid the potential inference of criminal guilt because such a policy promotes settlement of disputed civil liability,[9] it distinguished offers by an accused to the complainant to avoid criminal prosecution:
Specifically, we do not believe that the policy of protecting compromise offers in civil cases is served by protecting an accused who is attempting to "settle" or "compromise" criminal charges by "paying off" the complainant. Rather when an accused offers money to a complainant in exchange for "dropping the charges," the public policy against compounding crimes prevails.
988 P.2d at 1160-61 (citations omitted).[10]
In contrast, in United States v. Gonzalez, 748 F.2d 74 (2d Cir.1984) the court affirmed the admission of statements made during negotiations to settle a potential civil claim in a criminal prosecution for wire and mail fraud because the statements were offered to prove that the defendant committed a crime, rather than to demonstrate that a third party had a valid civil claim against the defendant. 748 F.2d at 78. The Second Circuit stated:
In addition, the primary policy justification for Rule 408's exclusion in the civil context does not apply to criminal prosecutions. Rule 408 is premised on the idea that encouraging settlement of civil claims justifies excluding otherwise probative evidence from civil lawsuits. Fed.R.Evid. 408 advisory committee note. However, encouraging settlement does not justify excluding probative and otherwise admissible evidence in criminal prosecutions. The public interest in the disclosure and prosecution of crime is surely greater than the public interest in the settlement of civil disputes. It follows that since nothing in the Rule specifically prohibits receiving in evidence the admissions and statements made at a conference to settle claims of private parties, they are admissible in any criminal proceeding.
Id.[11] Later, in Manko v. United States, 87 F.3d 50, 54-55 (2d Cir.1996) the Second Circuit *166 reaffirmed its ruling in Gonzalez, but required the trial court to balance the probative value of compromise evidence against its potential for unfair prejudice or jury confusion, as required by ER 403, before admitting it for consideration by a jury.
As have the courts, scholarly commentators examining the question of the applicability of ER 408 in criminal trials have disagreed, although it is fair to state that the majority favors application of the rule in criminal trials. But several have recognized that the Advisory Committee that drafted the Federal Rules of Evidence for ultimate Congressional adoption offered no guidance on the issue, and in fact, probably never even considered the issue. See, e.g., Leonard, THE NEW WIGMORE: A TREATISE ON EVIDENCE § 3.7.3 at 3:96 (2001) (recognizing that the federal rule refers to compromise of a "claim which was disputed as to either validity or amount" which seems far more appropriate when applied to civil cases than to criminal cases, and stating that it is likely that the drafters simply did not consider the issue of the rule's application in criminal cases).[12]
Accordingly, we turn to the adoption of the Rules of Evidence in this state, in search of relevant guidance as to the applicability of ER 408 in criminal trials where the offender and victim have compromised or attempted to compromise a civil claim arising out of the same conduct that gave rise to the criminal charge.
Karl Tegland explains that the Evidence Rules were adopted by the Washington Supreme Court in 1979 following a study of the Federal Rules of Evidence by Washington's Judicial Council, and that when the Judicial Council presented what was to become Washington's Rules of Evidence, each rule was accompanied by Judicial Council comments explaining the relationship between the then proposed rule and the rule as it had previously existed in Washington. Tegland, 5A WASHINGTON PRACTICE SERIES, EVIDENCE LAW AND PRACTICE § 101.7.
ER 408 is found in Title 4 of the Rules, dealing with relevancy and its limits. ER 402 states: "All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state. Evidence which is not relevant is not admissible." Comment 402 states in pertinent part: "The rule's deference to other codified law making relevant evidence inadmissible applies generally throughout the rules in Title IV." Like the Advisory Committee notes and other legislative history accompanying Federal Rule of Evidence 408, the Judicial Council's comment to ER 408 provides no express guidance with respect to the issue in this case. But we think it relevant that like the legislatures of some other states, Washington's Legislature has addressed the compromise of claims in the context of criminal trials  and Comment 402 suggests that a state statute that is contrary to one of the rules contained in Title 4 of the Rules of Evidence will prevail over the rule in question.[13]
Accordingly, we turn to ch. 10.22 RCW. This chapter deals with the compromise of misdemeanors. RCW 10.22.010 states:
When a defendant is prosecuted in a criminal action for a misdemeanor, for which the person injured by the act constituting the offense has a remedy by a civil *167 action, the offense may be compromised as provided in RCW 10.22.020, except when it is committed:
(1) By or upon an officer while in the execution of the duties of his office;
(2) Riotously;
(3) With an intent to commit a felony; or
(4) By one family or household member against another as defined in RCW 10.99.020 and was a crime of domestic violence as defined in RCW 10.99.020.
(Emphasis added). RCW 10.99.020(1) defines "family or household members" to include persons over the age of 16 who have or have had a "dating relationship." RCW 10.99.020(2) states that "dating relationship" has the same meaning as in RCW 26.50.010. And RCW 26.50.010(3) states, "`Dating relationship' means a social relationship of a romantic nature." Malicious mischief in the second degree  the offense with which O'Connor was charged  is not a misdemeanor. It is a Class C felony, and is also one of the crimes defined as "domestic violence" in RCW 10.99.020 when committed by one party to a "dating relationship" against the other party to the relationship. See, RCW 10.99.020(3)(m).
RCW 10.22.020 sets forth the procedure for compromising those misdemeanors that are subject to compromise in Washington:
In such case, if the party injured appear in the court in which the cause is pending at any time before the final judgment therein, and acknowledge, in writing, that he has received satisfaction for the injury, the court may, in its discretion, on payment of the costs incurred, order all proceedings to be discontinued and the defendant to be discharged. The reasons for making the order must be set forth therein and entered in the minutes. Such order is a bar to another prosecution for the same offense.
RCW 10.22.030 states: "No offense can be compromised, nor can any proceedings for the prosecution or punishment thereof be stayed upon a compromise, except as provided in this chapter."
"The essence of the compromise of misdemeanors statute is restitution to crime victims and avoidance of prosecution for minor offenses." State v. Norton, 25 Wash. App. 377, 380, 606 P.2d 714 (1980). Similarly, the public policy served by ER 408 includes encouraging settlement of disputed claims, which settlements would be discouraged if evidence of the settlement or attempted settlement were admissible to prove liability for the claim. See, Wright & Miller, FEDERAL PRACTICE & PROCEDURE EVIDENCE. § 5301, n. 23. And of course, settlement of disputed claims goes hand in hand with reducing courtroom congestion and preserving scarce judicial resources. See, Reichenbach v. Smith, 528 F.2d 1072, 1074 (5th Cir.1976) (observing that the primary purpose of excluding evidence of a compromise under ER 408 is to encourage non-litigious solutions to disputes, and stating: "With today's burgeoning dockets and the absolute impossibility of Courts ever beginning to think that they might even be able to hear every case, the cause of justice is advanced by settlement compromises [shepherded] by competent counsel, whose experience as advocates makes them reliable predictors of litigation were it pursued to the bitter end").
Notwithstanding these salutary goals,
the idea of resolving disputes by means other than a trial is often at odds with the goals of the criminal justice system. Enforcing the laws of the state by prosecuting individuals or entities that have violated these laws, while ensuring fair treatment and due process for the accused, does not fit into a discussion about getting parties out of the system by peaceful compromise. Although judicial efficiency and economy play a role in the criminal justice system, many argue these necessities should take a back seat to fairness, equality, and the enforcement of the laws of the state.
Note, When Two Worlds Collide: Examining the Second Circuit's Reasoning in Admitting Evidence of Civil Settlements in Criminal Trials, Winter 2001 Brooklyn Law Review 527, 533 (citing generally, at n. 20, Manko, 87 F.3d at 54). We generally agree with this observation, except where the Legislature *168 has expressly authorized compromise of criminal charges.
Certainly, it is within the legislative prerogative to determine which criminal acts for which the victim has a civil remedy will be subject to compromise in order to avoid criminal prosecution at the discretion of the trial court, and which will not. In Washington, the Legislature has determined that certain crimes shall not be subject to compromise, including crimes committed with felonious intent even though charged as misdemeanors, and including misdemeanors that are crimes of domestic violence.[14] Accordingly, the crime with which O'Connor was charged was not subject to compromise in order to avoid prosecution, even though Bologna had a potential civil remedy for the same act that gave rise to the charge. That being so, O'Connor can have had no reasonable expectation that the purposes and policies underlying ER 408 would bar the admission of evidence of his payment to Bologna in a felony/domestic violence prosecution brought by the State of Washington. And indeed, O'Connor's own words belie any such expectation. He told Bologna to go ahead and call the police, when she threatened to do so if he did not take care of the matter of the slashed tires, and he later told the investigating officer that although he considered the matter settled, the officer should pursue whatever course he thought to be necessary.[15]
We believe that applying ER 408 in a criminal action that is subject to compromise under ch. 10.22 RCW would serve the purposes of that chapter, as well as the purposes of ER 408. Thus, in a case otherwise subject to compromise under ch. 10.22 RCW, where the trial court exercises its discretion in such a manner as to allow the prosecution to continue to judgment, rather than to enter an order of dismissal prior to judgment based on the compromise, we believe that the court should apply ER 408 and decline to admit evidence of the compromise effort, if the defendant so requests. It would be illogical, indeed impossible, both to encourage compromise under the misdemeanor compromise statute, and to admit evidence of the compromise in order to establish guilt. Indeed, commentators have suggested that even in jurisdictions where ER 408 has been determined not to apply in criminal trials generally, the rule ought to apply to settlements made in compliance with state law. See, Mueller & Kirkpatrick, EVIDENCE PRACTICE UNDER THE RULES § 138 n. 16; n.44 (2d ed.1999) (citing Or.Rev.Stat. § 135.703  which is Oregon's version of ch. 10.22 RCW permitting compromise of certain misdemeanors where the person injured by the act constituting the crime has a remedy by civil action) all as discussed in When Two Worlds Collide, supra at 539 and n. 51; and at 562 and nn. 186-88.
But here, compromise was not permitted under the statute. O'Connor contends nevertheless that his payment to Bologna should have been excluded under ER 408 as an attempt to compromise a civil claim that Bologna could have pursued for the damage to her tires. He argues that the potential for civil liability was sufficient to trigger ER 408 and that because O'Connor never attempted to get Bologna to drop the charges, or to get the officer to drop his investigation, he could not have been attempting to compromise the criminal case. Although we agree that where ER 408 properly applies, the potential for civil liability is sufficient to trigger the application of the rule, and we also agree *169 that O'Connor could not have been attempting to compromise the felony/domestic violence criminal charge, at least not properly so, in that the charge was not subject to compromise under the statute, it does not follow that ER 408 is applicable automatically.
As we have noted, the purposes served by ER 408 include encouraging non-litigious settlement of claims and reducing court congestion. Certainly, voluntary compensation of crime victims by offenders is laudable. But the Legislature has selected elaborate means to accomplish restitution as to crimes that are not subject to compromise under ch. 10.22 RCW. See, e.g., ch. 7.68 RCW (Crime Victims Compensation Act); RCW 9.94A.753 as amended by Laws 2003 § 379 (Sentencing Reform Act restitution provisions); RCW 9.94A.505 (Sentencing Reform Act restitution provisions effective July 1, 2004); RCW 13.40.190 (Juvenile Justice Act restitution provisions); RCW 9A.20.030 (providing for restitution as an alternative to a fine). And by excluding certain crimes from compromise in ch. 10.22 RCW, the Legislature has, in effect, chosen the goal of even-handed enforcement of the criminal law over the goal of reducing court congestion, as to the excluded offenses.
With respect to domestic violence crimes specifically, RCW 10.99.010 recognizes that domestic violence is a serious crime against society, and states the Legislature's intent to ensure that domestic violence victims receive the maximum protection authorized by law. To that end, RCW 10.99.040(d) requires courts to identify on docket sheets those crimes that arise from acts of domestic violence. The designation does not alter the elements of the underlying offense but rather "signals to the court that the law is to be equitably and vigorously enforced." State v. O.P., 103 Wash.App. 889, 892, 13 P.3d 1111 (2000). The stakes are potentially higher for domestic violence offenders than for those who violate the same criminal statutes outside the domestic violence designation, in that upon conviction, sentencing courts are authorized to impose specialized no-contact orders, violation of which constitutes a separate crime. RCW 10.99.050(2); O.P., 103 Wash.App. at 892, 13 P.3d 1111. Thus neither of the purposes served by ER 408 apply in the context of domestic violence crimes, even those charged as misdemeanors.
We conclude that to apply ER 408 in criminal trials arising from domestic violence, whether charged as felonies or misdemeanors, thereby requiring the exclusion of evidence that is otherwise admissible and probative of the question of the defendant's guilt, would frustrate legislative intent with respect to the vigorous enforcement of laws against domestic violence. Accordingly, while the trial court based its evidentiary ruling in this case at least in part on different grounds, we affirm its evidentiary ruling.
Because O'Connor based his objection only on ER 408, we have not been required to address the admissibility of the compromise evidence in this case under any other rule. Accordingly, we point out that by making this ruling, we do not intend to preclude any defendant charged with a domestic violence misdemeanor from arguing that his or her alleged offense did not constitute domestic violence as defined by ch. 10.99 RCW, and where the charged offense is otherwise subject to compromise under ch. 10.22 RCW, from objecting to the admission of compromise evidence under ER 408, should the trial court, in the exercise of its discretion, elect to allow the case to proceed to judgment as is permitted by RCW 10.22.020 notwithstanding the compromise. Neither do we intend to preclude any defendant from objecting to the admission of compromise evidence based on ER 403. See, Manko, 87 F.3d at 55. And finally, we do not intend to preclude defendants from requesting the court to conduct preliminary fact finding under ER 104(a) and ER 104(b) where appropriate to the question of the admissibility of compromise evidence as an admission against penal interest based on competence or relevancy. See, Gano, 988 P.2d at 1163-65.
We affirm the trial court's evidentiary ruling in this case, and hold that with the exception of trials for misdemeanor charges that are subject to compromise under ch. 10.22 *170 RCW, ER 408 is not applicable in criminal trials to bar evidence of compromise of civil claims arising from the same conduct, as between the alleged offender and victim, where relevant to establishing guilt.
The remainder of this opinion lacks precedential value and will not be published in the Washington Appellate Reports, but will be filed of record as provided by RCW 2.06.040.
BECKER and SCHINDLER, JJ., concur.
NOTES
[1] RCW 9A.48.080 provides that a person is guilty of malicious mischief in the second degree if he or she knowingly and maliciously causes physical damage to the property of another in an amount exceeding $250.
[2] We treat O'Connor's remaining contention on appeal in the unpublished portion of this opinion.
[3] The trial court was referring to State v. Peterson, 2 Wash.App. 464, 465, 469 P.2d 980 (1970) (holding that defendant's statement to child sex abuse victim's mother, "[I]f you give me a break, I will go to the doctor" was admissible as a statement against penal interest); and State v. Barnett, 70 Wash.2d 420, 423 P.2d 527 (1967) (holding that defendant's purpose in writing to the prosecutor was to have pending charge disposed of in some way favorable to her, and thus her statement was admissible as a statement against penal interest tending to connect her to the crime). Both cases pre-date the 1979 adoption of the Rules of Evidence in Washington. Moreover, neither case involved the offer of compensation in settlement of a disputed claim, and the evidentiary issues turned on the rules governing hearsay. O'Connor's objection below was not based on hearsay; thus neither case is helpful to the analysis. We do not disagree, however, with the trial court's analysis with respect to O'Connor's statement to the police officer. ER 408, to the extent it may be applicable in criminal trials at all, only requires exclusion of statements against interest made during compromise negotiations. Moreover, as the trial court properly noted, ER 410 did not preclude admission of the statement to the police officer because it was not made in the context of a plea bargain. The real issue is whether Bologna should have been permitted to testify to what may have amounted to an offer to settle on her part (take care of this or I will call the police) followed by O'Connor giving her $800 to help her take care of the tires.
[4] See, e.g., State v. Land, 121 Wash.2d 494, 497-99, 851 P.2d 678 (1993) (ER 608); State v. Terrovona, 105 Wash.2d 632, 639-41, 716 P.2d 295 (1986) (ER 803).
[5] Washington's ER 1101 is similar to the federal rule.
[6] United States v. Hays, 872 F.2d 582 (5th Cir. 1989) (where defendant's activities at savings and loan led to civil litigation under banking regulations as well as criminal prosecution for conspiracy and other federal crimes, admission at criminal trial of civil settlement agreement and excerpts from civil depositions stating reasons for entering agreement was error under Rule 408 where offered to prove breadth of the conspiracy rather than for any permissible purpose contemplated by the rule).
[7] As the court noted, the Fourth Circuit and the D.C. Circuit have suggested in dicta that Rule 408 may apply in criminal proceedings. See, United States v. Graham, 91 F.3d 213, 218 (D.C.Cir.1996); United States v. Peed, 714 F.2d 7, 9-10 (4th Cir.1983).
[8] See, United States v. Logan, 250 F.3d 350, 367 (6th Cir.2001); United States v. Gonzalez, 748 F.2d 74, 78 (2d Cir.1984); United States v. Prewitt, 34 F.3d 436, 439 (7th Cir.1994).
[9] State v. Gano, 988 P.2d at 1160.
[10] The trial court had left it up to the jury to determine whether the defendant, by his conduct during the meeting of the two families, joined in his family's alleged effort to pay off the complainant in order to avoid criminal liability. The Hawaii Supreme Court reversed, ruling that under ER 104(a) the defendant's objective during the meeting was a preliminary question of fact to be determined by the trial court in advance of admitting the evidence, and that the trial court's failure to address the preliminary question was not harmless because the testimony at trial regarding the nature of the defendant's conduct was ambiguous and subject to interpretations that were consistent with his contention that the contact with the alleged victim had been consensual. 988 P.2d at 1164-66; and 988 P.2d at 1167-68.
[11] In State v. Mead, 27 P.3d 1115 (2001), the Utah Supreme Court considered the State's introduction of evidence during the defendant's trial for murder that during settlement negotiations in a civil wrongful death action regarding the same incident, the defendant offered to return the victim's body if the family would drop the suit. Following its determination that the plain language of its rule 408 was ambiguous  "It is unclear whether the rule contemplates this evidence to be inadmissible in only the trial related to the same dispute that is the basis of the compromise negotiations, in all civil trials, or in all trials whether civil or criminal"  the Court turned to federal authority and was persuaded by the Second Circuit's reasoning, ruling that Utah's rule 408 does not prevent admission in a criminal proceeding of "admissions and statements made at a conference to settle claims of private parties[.]" Id. at 1127-28.
[12] For a comprehensive review of the differing views of various courts and commentators, see, Note, When Two Worlds Collide: Examining the Second Circuit's Reasoning in Admitting Evidence of Civil Settlements in Criminal Trials, Winter 2001 Brooklyn Law Review at 527 et. seq.
[13] The Washington Supreme Court did not adopt the Judicial Council's comments. Nevertheless, both the Supreme Court and the Court of Appeals have cited them as authoritative. See cases cited at 5 Washington Practice Series § 101.7 at n. 4.
[14] O'Connor did not dispute at trial that the crime with which he was charged was a crime of domestic violence. He may have been able to properly raise that challenge. RCW 26.50.010(3) defining "dating relationship" includes factors that the court may consider when the nature of a social relationship is disputed. Although there was other evidence that indicated a romantic relationship, Bologna testified that the dating relationship was not exclusive, implying that it may not have been romantic, at least from her point of view.
[15] The State argues that even if ER 408 applies in criminal cases generally, it would not apply here because the rule does not exclude payments made in an effort to obstruct justice, that is, to "buy off" a complainant. Although the trial court never reached that issue in making the evidentiary rulings here at issue, if it had, we have considerable doubt that it properly could have found, as a fact preliminary to admission of the evidence under ER 104, that O'Connor made the payment in an effort to obstruct justice. The undisputed evidence would appear to be to the contrary.