[Nos. 1667-2; 1668-2. Division Two. November 5, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. PAMELA HARRIS, ET AL, *Appellants*.

*James S. Witt III*, for appellants.

*Donald F. Herron, Prosecuting Attorney*, and *Joseph D. Mladinov, Special Counsel*, for respondent.

REED, J.—Robert and Pamela Harris were convicted of felony possession of marijuana and possession of the same with intent to deliver. Both appeal from their convictions for possession with intent to deliver and Pamela Harris appeals from her conviction of felony possession.

On February 13, 1974, Pierce County sheriff's deputies

were executing a search warrant for the Harris home and any of their automobiles located thereat, when Mr. and Mrs. Harris arrived in a 1973 Oldsmobile driven by Mr. Harris, with his wife and minor child as passengers. Keys to the automobile's trunk were produced by "either Mr. or Mrs. Harris" and found therein was an unmarked suitcase containing five 1-pound bags of marijuana. The house yielded several small pipes, some Zig-Zag cigarette papers, a number of "roach clips," a special smoking device in the form of an "Uncle Sam bust," and from the kitchen cabinet, a gram scale. The vehicle's certificate of registration was issued in the State of Oregon, showing Robert Harris as the owner and listing his address as Milwaukie, Oregon. Robert Harris was a United States Army Warrant Officer, stationed at Fort Lewis.

It was established at trial that Mrs. Harris drove the car on occasion and as recently as a day or two before the arrest. Both defendants denied ownership of the marijuana or knowledge of its presence in the car and claimed the items found in the home had been left there by one Ray, an army associate of Mr. Harris. Ray supported this story, admitting he had used the items for smoking marijuana and had brought them to the Harris home from his barracks to prevent their discovery. Ray testified he had driven the car on both the day before and the day of the arrest, but when questioned concerning his specific use of the automobile on those days and about any knowledge of the marijuana, Ray invoked his privilege against self-incrimination.

Prosecution testimony established that the value of the marijuana was approximately $115 per pound, that all items found in the home were commonly used in smoking marijuana, that marijuana is usually sold by the pound or in "lids" of 20 grams each, and that "gram scales" are commonly used to reduce bulk marijuana into smaller lots for sale. Robert Harris' commanding officer, Major Scavo, testified Harris had told him he intended to plead guilty.

Both defendants challenge the sufficiency of the evidence

to support their convictions, and Robert Harris assigns additional error to the admission of Major Scavo's testimony.

We hold the evidence was not sufficient to sustain either verdict as to Pamela Harris, and reverse both of her convictions.

The general rule on possession is set forth in *State v. Mathews*, 4 Wn. App. 653, 656, 484 P.2d 942 (1971) as follows:

Possession of narcotic drugs may be either actual or constructive. . . . Constructive possession is proved when the person charged with possession has dominion and control over either the drugs or the premises upon which the drugs were found.

*See also State v. Potts*, 1 Wn. App. 614, 464 P.2d 742 (1969); *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969).

While the fact that Robert Harris, as owner and driver of the car, had possession of the marijuana does not preclude a like finding as to Pamela Harris since possession of a controlled substance may be joint, *State v. Weiss*, 73 Wn.2d 372, 438 P.2d 610 (1968), *State v. Wheatley*, 10 Wn. App. 777, 519 P.2d 1001 (1974), her possession must necessarily be constructive since it was not actual. The only evidence tending to prove dominion and control on her part is circumstantial and consists of the fact that she was a passenger in the automobile and the deputy's testimony that he obtained the keys to the trunk from "either Mr. or Mrs. Harris." Turning next to her role as passenger in the vehicle, *State v. Mathews, supra* at 656, states:

Whether a passenger's occupancy of a particular part of an automobile would constitute dominion and control of either the drugs or the area in which they are found *would depend upon the particular facts in each case.* Mere proximity to the drugs is not enough to establish constructive possession—it must be established that the defendant exercised dominion and control over either the drugs or the area in which they were found.

(Italics ours.) *See also State v. Callahan, supra.*

We do not find her occupancy of the passenger por-

tion of the vehicle sufficient under this test as she was completely separated from the locked trunk. The statement relating to production of the keys is too equivocal and therefore provides no more than a scintilla of evidence from which no permissible inference of dominion and control can be drawn. *See State v. Liles*, 11 Wn. App. 166, 171, 521 P.2d 973 (1974), where the court citing from *State v. Melrose*, 2 Wn. App. 824, 831, 470 P.2d 552 (1970), states:

> When substantial evidence is present, the drawing of reasonable inferences therefrom and the doing of some conjecturing on the basis of such evidence is permissible and acceptable. . . . *If, however, the necessity for conjecture results from the fact that the evidence is merely scintilla evidence, then the necessity for conjecture is fatal.*

(Citations omitted.)

■ Simple possession of a controlled substance, either actual or constructive, is a lesser-included offense within the crime of possession with intent to deliver. Since Pamela Harris cannot be said to have had possession in the first instance, her conviction on possession with intent to deliver, cannot stand. *State v. Fitzpatrick*, 5 Wn. App. 661, 669, 491 P.2d 262 (1971).

■ In the case of Robert Harris, we commence with a recognition that bare possession of a controlled substance, absent other facts and circumstances, allows for no permissible inference of intent to deliver. Mere possession alone is just as consistent with an intent to make personal use of the substance. *State v. Liles, supra* at 170.

However, additional facts and circumstances to be considered in this case are as follows:

1. The quantity of marijuana, *i.e.*, 5 pounds,

2. Marijuana is usually sold by the pound or in "lids" of 20 grams,

3. The market value of $115 per pound,

4. Possession of the gram scale commonly used to reduce bulk marijuana into smaller lots for sale, and

5. Major Scavo's testimony that Robert Harris told

him he intended to "plead guilty."

It is the compound of all the foregoing facts, when coupled with possession, which constitutes substantial evidence and thus properly enables the jury to draw an inference of intent to deliver.

Robert Harris' assignment of error regarding the statement he made to Major Scavo is presented in four segments: (1) the claim that his statement constitutes an offer of settlement or compromise and is thus not admissible, (2) that the statement was not produced by the State in response to a request made pursuant to CrR 4.5, (3) that despite defendant's request, the court refused to hold a hearing pursuant to CrR 3.5 to determine the voluntariness of the statement, and (4) that the statement, if made, did not rise to the stature of an "admission."

■ Defendant's statement to Major Scavo that he intended to plead guilty was not an offer of settlement or compromise since it did not pass between the parties to any litigation, but was an utterance to a third party not privy to the proceedings in this case. In any event, unlike the rule for civil cases, offers of settlement or compromise of criminal actions are not privileged. *State v. Vindhurst*, 63 Wn.2d 607, 616, 388 P.2d 552 (1964); *State v. Bixby*, 27 Wn.2d 144, 170, 177 P.2d 689 (1947).

■ The prosecution is not required by CrR 4.5[1] and CrR 4.7[2] to anticipate all facets of the defendant's case and

---

[1]CrR 4.5 reads in part as follows:

 **(d) Motions.** All motions and other requests prior to trial should ordinarily be reserved for and presented orally at the omnibus hearing unless the court otherwise directs. . . . Checklist forms substantially like the memorandum required by section (h) shall be made available by the court and utilized at the hearing to ensure that all requests, errors and issues are then considered.

The checklist form or motion by defendant in the instant case followed the format contained in the rule and item 5 requested discovery of "all oral, written or recorded statements made by defendant to investigating officers or to third parties and in the possession of the plaintiff."

[2]CrR 4.7 reads in part as follows:

"**(a) Prosecutor's Obligations.**

"(1) . . . the prosecuting attorney shall disclose to the defendant

prepare for its rebuttal case in advance of trial, and it has no obligation to unearth statements made to *possible* rebuttal witnesses and furnish them upon demand at the omnibus hearing. If, however, the State responds to matters as they develop during the trial by gathering evidence which it intends to use in rebuttal, it then has an obligation to furnish to the defendant any "statements" which are the proper subject matter of the continuing demands of the omnibus application. In this case the trial court found the statement was not in the possession of the prosecution when the demand to produce was made and that it was provided during trial as soon as it became available. Under these circumstances the appropriate remedy would have been a request, addressed to the sound discretion of the trial court, for a continuance or at the least for a delay, so that the defendant might prepare to meet this new development. No such request was made and as will later appear, the defendant took the stand to contradict Major Scavo's testimony and has shown no prejudice resulting from any alleged violation of CrR 4.5 or CrR 4.7.

The trial court declined to embark upon a hearing pursuant to CrR 3.5 to determine admissibility of the statement to Major Scavo. The defendant now suggests that he was a member of the armed services, and because he was being interrogated by his superior officer certain military sanctions could have been involved. Accordingly, we feel impelled to discuss the application of the rule in this context.

CrR 3.5 reads in part as follows:

When a statement of the accused is to be offered in

---

the following material and information *within his possession* or control no later than the omnibus hearing:

". . .

"(ii) Any written or recorded statements and the substance of any oral statements made by the defendant, . . .

". . .

"(4) The prosecuting attorney's obligation under this section is limited to material and information *within the knowledge, possession or control* of members of his staff." (Italics ours.)

evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, . . . for the purpose of determining whether the statement is admissible.

We find no cases discussing the application of CrR 3.5 in these particular circumstances, but its predecessor, CrR 101.20W,[3] has many times been held to apply to "custodial" statements only, *i.e.*, where the defendant has been restrained of his liberty by agents of the prosecuting authority. *State v. Toliver*, 6 Wn. App. 531, 494 P.2d 514 (1972); *State v. Woods*, 3 Wn. App. 691, 477 P.2d 182 (1970); *State v. Ratow*, 4 Wn. App. 321, 481 P.2d 20 (1971).

We do not deem it necessary for the purposes of this opinion to delve into the history of CrR 101.20W and the United States Supreme Court cases leading to its adoption. Neither do we feel that any lengthy exposition is necessitated by the substitution of the word "statement" in CrR 3.5 for the word "confession" in CrR 101.20W. The cases cited above antedate the rule change (July 1, 1973), yet they construe the previous rule as applying to statements as well as full confessions. *See State v. Woods, supra* at 695, which quotes from *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), as follows:

> [T]he prosecution may not use statements, *whether exculpatory or inculpatory*, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.

(Italics ours.) See also the official comment of the Criminal Rules Task Force, Washington Judicial Council, to the Washington Proposed Rules of Criminal Procedure, May 15, 1971.[4]

---

[3]The relevant portion of CrR 101.20W read as follows:

"(a) **Requirement for and Time of Hearing.** In every criminal case in which a confession or confessions of the accused are to be offered in evidence, the judge, either at the time of the trial or prior thereto, shall hold a hearing, . . ."

[4]The relevant portion of the official comment states at page 38:

We construe CrR 3.5 as applying to custodial statements only, and we do not extend the rule to cover statements made by a serviceman in conversations with his superior officer. The deference given to superior officers and the possibility that military sanctions may be applied in the event there is a state conviction for a criminal act are not sufficient to bring the rule into play. In any event, Major Scavo testified that the defendant was not in custody and was not the subject of any sort of official army inquiry at the time. The defendant elected to testify and denied he had made any such categorical statement to the Major, contending he had simply said that his attorney was engaged in plea bargaining and had advised him that he could plead guilty in return for probation. Under these circumstances it was for the jury to determine whether the statement in fact was made and to attach to it whatever weight they desired.

■■■ Additionally, we find the following quotation from *State v. Toliver, supra* at 534, particularly applicable:

While the provisions of CrR 101.20W are mandatory, *State v. Shelby,* 69 Wn.2d 295, 418 P.2d 246 (1966); *State v. Taplin,* 66 Wn.2d 687, 404 P.2d 469 (1965), statements which would be otherwise admissible do not become inadmissible solely because a CrR 101.20W hearing was not held. *State v. Baker,* 68 Wn.2d 517, 413 P.2d 965 (1966). If a review of the record discloses that there can be no issue concerning voluntariness, rights have not been violated by failure to hold such a hearing. *State v. Booth,* 75 Wn.2d 92, 449 P.2d 107 (1968); *State v. Lopez, supra* [67 Wn.2d 185, 406 P.2d 941 (1965)].

■■■ That the statement, if made, was an admission would seem to be evident. *See State v. Barnett,* 70 Wn.2d 420, 423 P.2d 527 (1967), where the court states at page 424:

Any voluntary statements by one suspected or accused

"Throughout the rule the Task Force substituted the word 'statement' for the original word 'confession'. This was done to make the proposed rule conform to the most recent language relating to violation of the 5th amendment used by the Supreme Court. It represents a broadened understanding of what statements might be successfully objected to." (Washington Proposed Rules of Criminal Procedure, May 15, 1971.)

of crime relating to facts or circumstances which indicate either a consciousness of guilt or which tend to show a connection with conditions or events tending to connect the accused with the crime charged are receivable in evidence as admissions against interest. . . . And this is the rule *even though explanations from the persons making the statements might well render them less damaging or even innocuous.*

(Citations omitted. Italics ours.) *Cf. State v. Weekly,* 41 Wn.2d 727, 252 P.2d 246 (1952).

 While the statement in *Barnett* was much less equivocal than the statement to Major Scavo, when one tells another that he intends to "plead guilty" it is tantamount in lay terms to a statement that he in fact committed the acts charged to him in the criminal proceeding, in this case possession and possession with intent to deliver.

Lastly, we consider a question which arose for the first time in oral argument to this court as to whether a conviction of simple possession can stand together with a conviction of possession of the same substance with intent to deliver? Simple possession of a controlled substance is a lesser-included offense in a charge of possession of that same substance with intent to deliver, all elements of the former being included in proof of the latter. *State v. Fitzpatrick, supra.*

Count two of the information herein charged that the defendants "did then and there being unlawfully and feloniously possess a controlled substance, to-wit: Marihuana (Cannabis)." There is no mention of the quantity alleged to have been possessed. In addition, the jury was instructed on the elements necessary to a finding of guilt *without* reference to any quantity.

A necessary element of felony possession of marijuana is that the quantity be more than 40 grams. RCW 69.50.401 (c); mere possession of 40 grams or less is a misdemeanor, RCW 69.50.401 (d), unless possession is coupled with intent to manufacture or deliver, RCW 69.50.401 (a) (1) (ii). Thus, under the charge and the instructions the jury's verdict on

count two is for the commission of a misdemeanor, a lesser-included offense under count one, and is merged therein by operation of law. In accordance with the reasoning of *State v. Cowles*, 14 Wn. App. 14, 538 P.2d 840 (1975), count two must be dismissed.

Affirmed as to Robert Harris on count one and remanded for dismissal of count two; reversed and remanded for dismissal on both counts as to Pamela Harris.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied December 1, 1975.

Review denied by Supreme Court February 10, 1976.