# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51914-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| TAMARA M. AVERY, | |
| Appellant. | |

MAXA, C.J. – Tamara Avery appeals her conviction of unlawful possession of a controlled substance with intent to deliver and the trial court's imposition of legal financial obligations (LFOs).[1] We hold that the State produced sufficient evidence of her intent to deliver to support the conviction, but that the trial court erred by failing to consider her ability to pay before imposing discretionary LFOs. Accordingly, we affirm Avery's conviction, but we remand for the trial court to address the imposition of LFOs.

FACTS

On January 27, 2016, federal drug enforcement agents obtained a search warrant that authorized the search of Avery's apartment, vehicle, and cell phone. After the agents observed

---

[1] Avery also was convicted of bail jumping for failing to appear at a required hearing. She does not challenge this conviction on appeal.

Avery walk out to her vehicle, put her purse in her car, and close the door, they escorted Avery back into her apartment and served her with the warrant.

In Avery's apartment, agents seized a scale, a cell phone, drug paraphernalia, and several plastic baggies. From Avery's purse, which they removed from her car, they seized eight bags of methamphetamine, another cell phone, and plastic baggies. They also seized a flip style cell phone that Avery was carrying. The State charged Avery with unlawful possession of methamphetamine with intent to deliver.

At trial, Special Agent Daniel Riley stated that drug dealers often have multiple cell phones to evade law enforcement, using "burner" phones that they throw away. He explained that drug addicts often are drug sick, which means that they are having withdrawal symptoms and need more drugs to feel better. Riley also stated that drug dealers often label their bags of narcotics to keep track of the weight and amount in each bag. He explained that an eight ball of methamphetamine is approximately three ounces and would supply about thirty doses, which is usually a dealer level quantity and not an amount a normal user would have.

Through Riley, the State introduced text messages taken from Avery's phone for a three-day period to show active drug dealing. An outgoing message suggested that Avery had a ready supply: "I have more." Report of Proceedings (RP) at 263. Two incoming messages suggested that they come from drug sick users: "I am in need." RP at 264. "Call me now, pretty please. Need you bad." RP at 264. Other messages appear to discuss recent transactions: "Getting a lot of complaints about the last and not sure on new. I don't like." RP at 265. "This last isn't. . . . It's not the same because I looked at -- because I looked at all, me, them under black light. If it is not--if it is, it's not stable and shelf life." RP at 267. "Come look at it with me and bring more if you have--if you have so we can look." RP at 267. Other messages indicate future

2

transactions: "Depends how ma[n]y they buy and on who's selling them. Six to ten apiece." RP at 269. "Do you have some you're getting rid of." RP at 270. "K. I can trade if she wants to do that." RP at 271. "I was thinking three to her and .5 to you for you." RP at 271. "Three grams to her and half gram for you for doing it." RP at 271-72. "She said she's getting eight to ten apiece for them." RP at 273.

Avery testified that she had been a registered nurse but had gotten ill and became addicted to prescription drugs. At one point, she started smoking methamphetamine in place of her prescription drugs. She stated that she consumed an eight ball of methamphetamine every day and that the methamphetamine from her purse was for personal use. She claimed that she used the plastic bags and scale when crafting.

In rebuttal, Vancouver police officer Shane Hall testified that a person consuming 2 to 3 grams or an eight-ball of methamphetamine per day would have a $2,000 per month drug habit. He stated that the text message, "I was thinking three to her and .5 to you for you", RP at 271, described a "kickdown," meaning that three grams would go to the buyer and .5 of a gram would go to the person that facilitated the deal. Finally, he explained that people addicted to opioids often will transition to heroin because of the price but he had never heard of anyone transitioning to methamphetamine from opioids.

A jury found Avery guilty of unlawful delivery of methamphetamine. At sentencing, the trial court made a finding, without a hearing on Avery's financial circumstances, that Avery was indigent but that it was anticipated that she would be able to pay financial obligations in the future. The court then imposed several LFOs, including a discretionary jury demand fee and a criminal filing fee.

Avery appeals her conviction and the imposition of certain LFOs.

3

ANALYSIS

A.    SUFFICIENCY OF EVIDENCE

Avery argues that the State failed to present sufficient evidence to prove that she intended to deliver the methamphetamine she possessed.  We disagree.

1.    Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.  *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014).  In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence.  *Id.* at 106.  Credibility determinations are made by the trier of fact and are not subject to review.  *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014).  Circumstantial and direct evidence are equally reliable.  *Id.*

2.    Legal Principles

In order to prove unlawful possession of a controlled substance with intent to deliver, the State had to prove (1) unlawful possession (2) of a controlled substance (3) with the intent to deliver.  RCW 69.50.401(1).[2]

As a general rule, "[m]ere possession of a controlled substance, including quantities greater than needed for personal use, is not sufficient to support an inference of intent to deliver." *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010).  But a finder of fact can infer intent to deliver from possession of a significant amount of a controlled substance plus at least one additional factor.  *Id.*

_____

[2] RCW 69.50.401 was amended in 2019.  Because those amendments do not affect our analysis, we cite to the current version of the statute.

Several courts have upheld convictions for intent to deliver based on a large amount of drugs and additional evidence. *E.g., State v. Hotchkiss*, 1 Wn. App. 2d 275, 281-82, 404 P.3d 629 (2017) (8.1 grams of methamphetamine and $2,150 sufficient), *review denied*, 190 Wn.2d 1005 (2018); *O'Connor*, 155 Wn. App. at 291 (a large amount of marijuana, a sophisticated grow operation, and a scale sufficient); *State v. Simpson*, 22 Wn. App. 572, 575-76, 590 P.2d 1276 (1979) (quantity of drugs and nature of packaging sufficient); *State v. Harris*, 14 Wn. App. 414, 418-19, 542 P.2d 122 (1975) (quantity of drugs, value and a scale sufficient).

3.    Analysis

Here, both Riley and Hall testified that the amount of methamphetamine that Avery possessed was far more than a typical user would possess. This evidence supported an inference that Avery intended to deliver the drug because of the quantity she possessed. Further, three additional factors supported the jury's finding that Avery possessed the methamphetamine with the intent to deliver.

First, Avery possessed eight separate bags of methamphetamine, two of which contained at least 3 grams of methamphetamine. Both Riley and Hall testified that a typical use was one-tenth of a gram. One of the bags had the number 3 printed on the outside, which Riley explained is how drug dealers keep track of the weight and amount in each bag.

Second, the agents seized small plastic bags from Avery's purse and her apartment, a digital scale and three cellphones. This evidence is consistent with drug dealing. Digital scales facilitate breaking large quantities down into smaller amounts, those amounts often are placed in small bags, and drug dealers often use multiple cellphones to evade law enforcement.

Third, Avery's text messages strongly suggest active drug dealing. As noted above, the messages suggested that Avery had a supply, that she was contacted by drug sick users, that she

had some problems with the last batch, and that she was negotiating future drug trades. These text messages allow an inference that Avery was transacting methamphetamine using her cellphone.

Viewed in a light most favorable to the State, the evidence supports the jury's finding that Avery possessed the methamphetamine with the intent to deliver it. Accordingly, we hold that the evidence was sufficient to convict Avery of possession of methamphetamine with intent to deliver.

B.      IMPOSITION OF LFOS

Avery argues, and the State concedes, that the trial court erred in finding that she had the ability to pay discretionary LFOs without actually conducting an adequate inquiry into her ability to pay. We agree.

In *State v. Blazina*, the court held that former RCW 10.01.160(3) (2015) requires the trial court to conduct an individualized inquiry on the record about a defendant's current and future ability to pay before imposing discretionary LFOs. 182 Wn.2d 827, 839, 344 P.3d 680 (2015). Factors the sentencing court must consider include (1) incarceration, (2) other debts, including other court costs and restitution, (3) income, (4) assets and other financial resources, (5) monthly living expenses, (6) employment history, (7) health care costs, and (8) the ways of proving indigency under the comment to GR 34. *State v. Ramirez*, 191 Wn.2d 732, 742-44, 426 P.3d 714 (2018). Many of these questions can be answered by looking at a defendant's motion for an order of indigency. *Id.* at 744.

Here, the trial court imposed a jury demand fee as a discretionary LFO and made a finding that although Avery was indigent, she had the ability to pay LFOs in the future.

However, the trial court's inquiry into Avery's financial circumstances was minimal. The court did not consider any of the factors identified in *Ramirez*.

We hold that the trial court's inquiry into Avery's ability to pay before making a finding that she had a future ability to pay LFOs was inadequate. Therefore, we remand for the trial court to address imposition of LFOs. Further, if the trial court on remand finds that Avery is indigent as defined in RCW 10.101.010(3)(a)-(c), under the 2018 amendments to the LFO statutes the court cannot impose any discretionary LFOs and must strike the criminal filing fee, a nondiscretionary LFO. RCW 10.01.160(3); RCW 36.18.020((2)(h).

CONCLUSION

We affirm Avery's conviction of unlawful possession of methamphetamine with intent to deliver, but we remand for the trial court to address imposition of LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.


We concur:

_____
MELNICK, J.

_____
GLASGOW, J.

7