

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37133-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REBECCA ANNE CLEMMER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J.P.T.[1] — Rebecca Clemmer appeals from her Stevens County

conviction for vehicular homicide, raising challenges concerning her trial and the

judgment and sentence. We affirm the conviction and remand to strike two provisions of

the judgment.

## FACTS

Several witnesses observed Ms. Clemmer driving erratically for nearly 20 miles on

northbound Highway 395 in northern Spokane and southern Stevens Counties. They

described a vehicle swerving from shoulder to shoulder over a considerable distance and

driving for extended periods of time in the oncoming lane, sending southbound vehicles

---

[1] Judge Kevin M. Korsmo was a member of the Court of Appeals at the time
argument was held on this matter. He is now serving as a judge pro tempore of the court
pursuant to RCW 2.06.150.

off the roadway to avoid a collision. Ms. Clemmer testified that she was returning to her Colville home after visiting her mother's residence in Spokane.

Ms. Clemmer then parked in the middle of the highway near Clayton and began consuming food purchased from a Zip's restaurant. Passing motorists unsuccessfully attempted to attract her attention, but she ignored them. She then accelerated in excess of 60 miles per hour, and swerved into the oncoming lane before striking a southbound vehicle, killing the driver Erik Bruhjell. Mr. Bruhjell was on the shoulder attempting to get off the roadway when she struck him. The first trooper on the scene, Don Field, spoke to Ms. Clemmer while she was being treated in her car by medical personnel before being extracted from the car. She told him she was in a hurry to get home and pick up her children from daycare. When asked why she had stopped in the middle of the road, she claimed to have parked on the side of the roadway.

Ms. Clemmer was transported by helicopter to a hospital in Spokane. Trooper Ryan Senger arrived at the hospital after Clemmer. He advised her of her *Miranda*[2] warnings. When the trooper asked if she wanted speak with him, "she asked about speaking to an attorney and said that she should speak with one first." Report of Proceedings (RP) at 35-36. The trooper deemed the statement ambiguous and unclear, but did not question her further due to her incoherence.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Detective Jordan Rippee later visited Ms. Clemmer at the hospital, advised her of her rights, and obtained her agreement to speak with him. She related the same story that she later told the jury—she was going to visit her mother in Spokane, she took half of her regular daily hydrocodone dosage, she stopped at Jack-in-the-Box for food, and she started driving back to Colville. She did not remember the collision.

The Stevens County Prosecuting Attorney filed a single charge of vehicular homicide. A CrR 3.5 hearing was conducted to qualify the statements made to the three Washington State Patrol officers. Defense counsel sought to exclude only one statement:

> Judge, my only issue is with respect to the state's first witness, Trooper Field, and the incriminating statement in response to his question, "I was in a hurry—to get my kids from day care."

RP at 48. The court concluded that the statements made to Trooper Field were not the product of custodial interrogation and admitted them. Although not challenged, the court also determined that Ms. Clemmer's statement to Trooper Senger was ambiguous, resulting in the conclusion that Ms. Clemmer voluntarily waived her rights in order to speak with Detective Rippee.

A lengthy jury trial ensued, with the State calling 21 witnesses; Ms. Clemmer was the sole defense witness.[3] Without objection, both Trooper Senger and the phlebotomist

---

[3] The defense intended to recall Detective Rippee as a defense witness, but instead took advantage of a period between State's witnesses to ask further questions of the trooper. RP at 488-493.

3

testified to the existence of needle marks on Ms. Clemmer's arm. Senger also testified that Ms. Clemmer was impaired. On cross-examination, the trooper admitted he did not know what drugs had been administered to Clemmer by medical staff and did not acknowledge the injuries the woman had suffered in the wreck.

Laboratory reports showed that Ms. Clemmer had 0.077 mg per liter of hydrocodone in her system; therapeutic levels were between .01 mg to .05 mg. Urinalysis testing also showed the presence of benzodiazepines, opiates, oxycodone, and cannabis in her system.

Ms. Clemmer testified consistent with the statement she gave to Detective Rippee. She was taking hydrocodone for pancreatic pain. She remembered stopping at Zip's and eating while driving, but did not remember anything else up until her arrival at the hospital. Ms. Clemmer testified about previous hospitalizations for high blood pressure and diabetic/blood sugar issues that had made her sleepy. She admitted on cross-examination that she had told others that she fell asleep before the accident.

The prosecutor argued the case on the theory that Ms. Clemmer drove recklessly and was under the influence of drugs. Defense counsel took issue with the latter theory, arguing that Trooper Senger had rushed to characterize Clemmer as an illegal drug user due to the needle marks and lacked supporting evidence for his theory. As to the reckless driving, counsel argued that the driving was so extreme and unusual that it reflected health problems rather than drug impairment.

4

The jury convicted Ms. Clemmer as charged. After the trial court imposed a top end standard range sentence, Ms. Clemmer timely appealed to this court. A panel considered the appeal without conducting argument.

ANALYSIS

In order, we initially consider Ms. Clemmer's allegations that the trial court erred in admitting her statements to Detective Rippee, that she received ineffective assistance of trial counsel, and that the prosecutor erred in closing argument. We then jointly address her challenges to the conditions of the judgment and sentence.[4]

*Statements to Detective*

Ms. Clemmer first challenges the trial court's determination that the statements she made at the hospital to Detective Rippee should not have been admitted at trial in light of her assertion of her right to counsel to Trooper Senger. She waived and/or invited this alleged error, which also was harmless.

RAP 2.5(a) acknowledges the basic principle of appellate review—appellate courts will not review issues not raised in the trial courts. Matters of manifest constitutional error may be raised for the first time on appeal if the record is adequate. RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). Here, the prosecutor properly qualified the statements she desired to use at trial in accordance

---

[4] Due to the absence of multiple errors, we do not consider her claim of cumulative error.

with the dictates of CrR 3.5. *State v. McFarland*, 15 Wn. App. 220, 222, 548 P.2d 569 (1976); *State v. Harris*, 14 Wn. App. 414, 420-422, 542 P.2d 122 (1975). As part of that process, the prosecutor put forth evidence that (1) Ms. Clemmer was not in custody when questioned by Trooper Field, and (2) that she made an equivocal request for counsel to Trooper Senger, which allowed Detective Rippee later to clarify and obtain a valid waiver of right.

On appeal, Ms. Clemmer does not challenge the statements to Trooper Field, but does now assert that the court erred in finding that her assertion of the right to counsel was equivocal. She had the opportunity to present argument to the trial court on the topic but expressly limited her concerns to one statement made to Trooper Field. She has waived the opportunity to now complain about the statement to Detective Rippee. *State v. Mierz*, 127 Wn.2d 460, 468, 901 P.2d 286 (1995) (failure to object to evidence and seek to suppress it waived claim of error on appeal).

Alternatively, she also has invited the error about which she now complains. One cannot cause an error and then attempt to benefit from the error on appeal. This is known as the doctrine of invited error. *E.g.*, *State v. Studd*, 137 Wn.2d 533, 545-549, 973 P.2d 1049 (1999). Ms. Clemmer refused to challenge the evidence below and did not object to admission of the testimony at trial. If there was any error below, she invited it.

Finally, any error in the admission of the detective's testimony concerning her statements to him was harmless. The recitation of Ms. Clemmer's travels in Spokane was

6

largely the same as her own trial testimony. The admission of the same evidence by the State did not prejudice her.

The challenge to the testimony of Detective Rippee is without merit.

*Effective Assistance of Counsel*

Ms. Clemmer next argues that her counsel failed to perform effectively by failing to object to Trooper Senger's opinion that she was impaired and to the testimony of the trooper and the phlebotomist concerning the needle marks in her arms. This was a clear case of trial strategy.

Long-settled standards govern review of ineffective assistance claims. An attorney must perform to the standards of the profession; the failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *McFarland*, 127 Wn.2d at 334-335. In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Thus, to prevail on a claim of ineffective assistance, the defendant must show both that her counsel erred and that the error was so significant, in light of the entire trial record, that it deprived her of a fair trial. *Id.* at 690-692. When a claim can be disposed of on one ground, a reviewing court need not consider both *Strickland* prongs. *Id*. at 697.

The decision to object to evidence is a matter of trial tactics. *E.g.*, *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989) (object). This court has noted that a reviewing court presumes that a "failure to object was the product of legitimate trial strategy or tactics, and the onus is on the defendant to rebut this presumption." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007) (citing cases).

Here, counsel did not object when Trooper Senger, qualified as an expert, expressed his opinion that Ms. Clemmer was impaired by drugs. Ms. Clemmer does not point to any defect in the trooper's qualifications or otherwise explain that he was not qualified to express an opinion. Instead, she claims that the expression of that opinion was improper under *State v. Quaale*, 182 Wn.2d 191, 340 P.3d 213 (2014), and that counsel could not have been engaged in trial strategy.[5] However, the record demonstrates the contrary.

Counsel did not object to testimony from Senger and the phlebotomist that needle marks were present on Ms. Clemmer's arm, nor did he challenge Senger's opinion that Ms. Clemmer was driving while impaired. Counsel did, however, effectively cross-examine Senger about the basis for his opinion and demonstrated that the trooper was unfamiliar with Clemmer's medical history or treatment resulting from the accident, including the pain killers with which she had been treated. Instead, pointing to the

---

[5] We need not address respondent's argument that appellant gives *Quaale* an overly expansive reading.

testimony about the needle marks and lack of information about the medical intervention, counsel later argued to the jury that Senger had rushed to judgment and assumed illicit drug usage without properly investigating his client's background or considering the effects of the accident and the ensuing treatment on his client's condition.  RP at 850-852.

The cross-examination of Senger's opinion became the central defense to the impairment prong of the vehicular homicide charge.  Counsel understandably did not object to the testimony or to the needle mark observations since they were a foundation to that defense.  It was counsel's trial strategy to permit the testimony and then counterattack it.  The strategy was effectively employed.

Ms. Clemmer has not established that counsel performed ineffectively.  Her claim of ineffective assistance fails.

*Prosecutorial Misconduct*

Ms. Clemmer also argues that the prosecutor committed misconduct in closing argument by shifting the burden of proof to the defense.  The argument did not shift the burden.

Claims of prosecutorial misconduct also are reviewed under familiar standards. The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial.  *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997).  Prejudice occurs where there is a substantial

likelihood that the misconduct affected the jury's verdict. *Id.* at 718-719. The allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Reversal is not required where the alleged error could have been obviated by a curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). The failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.; State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). A prosecutor has "wide latitude" in arguing inferences from the evidence presented. *Stenson*, 132 Wn.2d at 727. In addition, once a defendant presents evidence, a prosecutor can fairly comment on what was not produced. *State v. Barrow*, 60 Wn. App. 869, 871-873, 809 P.2d 209 (1991); *State v. Guizzotti*, 60 Wn. App. 289, 298, 803 P.2d 808 (1991); *State v. Contreras*, 57 Wn. App. 471, 788 P.2d 1114 (1990)

In closing, defense counsel argued that the troopers had attempted to portray his client in a bad light. One example he gave was that Trooper Senger had mentioned Ms. Clemmer's lack of remorse as a factor in his assessment of her condition. RP at 852. Counsel also argued that his client did not remember what happened, leaving counsel to only theorize possibilities. RP at 857. In rebuttal, the prosecutor responded that Ms. Clemmer's behavior in the hospital and on the witness stand were factors weighing on

her credibility, and that she showed no remorse at any time for the accident she had caused or the life she had taken. RP at 861-862. Instead, the focus of her testimony was on how she had been impacted by the collision. The prosecutor then continued,

> The only tears were when she first got on the stand for herself because she doesn't want to be charged with this crime—she knows she was driving under the influence. She couldn't even tell you she wasn't.

RP at 862.

Ms. Clemmer now alleges that the prosecutor's comments on Ms. Clemmer's testimony amounted to faulting the defense for not providing evidence and shifted the burden of proof to the defense. They did not. In context, the statements were nothing more than recalling the defendant's own testimony and contrasting her lack of knowledge and lack of remorse for the victim with her knowledge of her behavior before the accident and her concern for her own future. The prosecutor's remarks were comments on credibility and inferences to be drawn from the evidence. They did not amount to suggesting that the defendant had to provide any evidence or meet a burden of proof. Rather, the comments pointed out the holes in the defendant's story by noting what was missing from it, as well as the holes in her presentation that suggested her denial was not credible.

These were not burden-shifting comments. There was no error, let alone error so egregious that it could not have been cured by a proper objection. The prosecutor did not commit misconduct in closing argument.

11

*Sentencing Conditions*

Ms. Clemmer points to a scrivener's error in the judgment form and also argues that several sentencing conditions are not crime-related. She did not make any of these arguments to the trial court, so this court need only address a couple of her points.

The record reflects that Ms. Clemmer is not a minor. Accordingly, the judgment provision indicating that notice should be sent to the Department of Licensing to revoke a juvenile's driver's license is erroneous. It should be struck.

Despite finding Ms. Clemmer indigent, the court nonetheless required her to pay fees for community supervision. This was error. *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). We also direct the trial court on remand to strike this provision.

Ms. Clemmer challenges three additional community custody conditions on the basis that they are not related to her crime. One of the challenges is an allegation that the prohibition on associating with known illegal drug users is improper, while the other challenged conditions indicate she should obtain a drug/alcohol evaluation and not possess alcohol containers. Whether a community custody condition is crime-related is an inherently factual consideration. Accordingly, any challenge to such a condition normally must initially be raised in the trial court. *State v. Peters*, 10 Wn. App. 2d 574, 591, 455 P.3d 141 (2019); *State v. Casimiro*, 8 Wn. App. 2d 245, 249, 438 P.3d 137, *review denied*, 193 Wn.2d 1029 (2019). We believe that is the case here. For instance, in our common experience, evaluators and treatment providers typically include potential

12

No. 37133-6-III
*State v. Clemmer*

alcohol abuse in conjunction with drug treatment. If that is not the case in Stevens County, then a timely question to the trial court could have clarified its intention on this point. In the absence of such a record, we will not speculate about the possibilities, particularly given the court's unchallenged chemical dependency finding. Accordingly, we decline to consider the crime-relatedness of these provisions.

The judgment is affirmed and the case remanded to strike the two noted sentence provisions.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.P.T.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, A.C.J.

13